**EXHIBIT A**




156 Battery Street, Burlington, VT 05401
T 802 660 4735 | F 802 419 3662

By Appointment Only:
92 Fairfield Street, St. Albans, VT 05478
T 802 524 9721 | F 802 419 3662

Edward G. Adrian (Of Counsel)
Christian Chorba
James F. Conway, III*
Steven R. Ducham
Brian P. Monaghan
Claudine C. Safar+

*Also licensed in New Hampshire and Maine

+Also licensed in Massachusetts

June 11, 2018

Anne Damone, Clerk of the Court
Vermont Superior Court
Windham Civil Division
PO Box 207
Newfane, VT 05345

**Re: David Gregory v. Mount Snow Ski Educational Foundation and Todd Ormiston**
**Docket No. __________**

Dear Anne:

Enclosed for filing with the Windham Civil Division, please find a Verified Complaint and a check for the filing fee of $295.00.

Thank you for your attention to this matter. Please contact me should you have any questions.

Sincerely,

Monaghan Safar Ducham PLLC

Claudine C. Safar, Esq.

Enclosures

STATE OF VERMONT

SUPERIOR COURT
WINDHAM UNIT

CIVIL DIVISION
DOCKET NO. __________

DAVID GREGORY,
Plaintiff,

v.

MOUNT SNOW SKI EDUCATIONAL FOUNDATION, INC. & TODD ORMISTON,
Defendants.

**VERIFIED COMPLAINT**

NOW COMES Plaintiff, David Gregory, by and through his attorneys, Monaghan Safar Ducham PLLC, and hereby complains against Defendants as follows:

**I. THE PARTIES**

1. David Gregory (hereinafter also "Gregory") is a sixty-year old individual residing in Intervale, New Hampshire.

2. The Mount Snow Ski Educational Foundation, Inc. is a Vermont non-profit corporation with a principal place of business at 248 Route 100, West Dover, Vermont.

3. Todd Ormiston is an individual and the head of school for Mount Snow Ski Educational Foundation, Inc. and, upon information and belief, resides in West Dover, Vermont.

4. This Court has jurisdiction over this dispute pursuant to 4 V.S.A §31.




156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com

## II. FACTS

5. Plaintiff repeats and realleges paragraphs 1-4 above.

6. Mount Snow Ski Educational Foundation (also referred to herein as Mount Snow Academy or "MSA") is a snow sports academy offering schooling and boarding for high school students.

7. MSA is based out of a slope-side Training Center at Mount Snow Resort, Vermont and provides athlete lodging at the former Matterhorn Inn.

8. Athletes attend MSA for the "winter-term", from early November through early April, and train in the snow sport of their choice: alpine ski racing, freeskiing, or snowboarding.

9. Dave Gregory is a level III certified alpine ski race coach by the United States Ski Association who has 39 years in the business and also is the president and owner of Peak Performance, LLC, a New Hampshire limited liability company having its principal place of business in Intervale, New Hampshire. Peak Performance runs alpine ski racing training camps.

10. In February 2016, Gregory was first approached about the alpine director position by an Academy board member.

11. Ormiston and Gregory had several meetings and communications prior Ormiston offering Gregory the position as head alpine director in early June 2016.

12. After some negotiation, a contract was formed between MSA and Gregory in July 2016.

13. Throughout the interviews, Ormiston consistently represented to Mr. Gregory that the alpine director position would be for three years.




156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com

14. Mr. Gregory would not have agreed to less than a 3-year term, because he was giving up an already established head coach position with the Mount Washington Valley Ski Team that he had held for thirty years.

15. Ormiston and MSA, in addition to employment, promised Gregory student attendance at his Peak Performance summer camps, thereby boosting his overall income.

16. Boosting summer camp, student enrollment was a key factor in Gregory accepting the position with MSA, because Gregory derives a significant portion of his annual income from his camp business, of which Ormiston and MSA were aware.

17. In July 2016, Gregory signed a letter of understanding that specified that his MSA season of responsibility lasted from September 2016 through June 2017, with required availability in the summer for recruitment, retention and planning with MSA for the following season. The letter of understanding was presented to Gregory in the context of the oral contract containing the three-year term.

18. In addition to the oral contract, the letter of understanding's statement that Gregory need be available in the summer before the next season: "with clear expectations of reasonable availability . . . for planning, recruitment and retention purposes."[1]

19. The three-year term contained in the oral contract is supported in conversations between Gregory and Ormiston.

[1] The letter of understanding details ten-months of in-person, paid responsibility but then specifies just nine months (September-May). In Mr. Gregory's first year with MSA, he was additionally paid for June, for a total of ten months of payment.

MONAGHAN SAFAR DUCHAM PLLC

156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com

20. Initially, Ormiston was positive toward Gregory, stating "I like your coaching style; that's why I hired you."

21. Ormiston soon began undercutting Gregory and another staff member brought on by Gregory, namely Shawn Smith, a sixty-four year old seasoned, alpine ski coach.

22. Smith was a long-time partner of Gregory in the Peak Performance camp business and a close personal friend.

23. Mr. Ormiston frequently got into shouting with Smith the 64-year-old coach, sometimes making disparaging remarks to Gregory about Smith.

24. Ormiston called Smith a "bitter, angry old man," and in a planned confrontation with Smith, told Gregory that he better "have his [Ormiston's] back" or Gregory would find himself in hot water as well.

25. Ormiston began micromanaging Mr. Gregory to such a degree that Mr. Gregory had difficulty doing his job.

26. Board members were aware and admonished Ormiston for interfering with Gregory's work. Ormiston even admitted to Gregory that he micromanaged him, saying, "There is some validity to that."

27. Ormiston asked Gregory to perform inappropriate tasks that were far outside of his job description and training, for example asking Greogry to assist with refurbishing the former Matterhorn Inn after MSA took it over for use as the school.

28. Gregory was required to paint, move furniture, transport heavy objects in his own personal truck and Ormiston even dangerously insisted Gregory install electrical wiring in the MSA school.




156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com

29. Gregory lacks any training whatsoever as an electrician or electrical engineer.

30. Gregory was asked to spend the night at the Matterhorn basement and he and others informed Ormiston that they had terrible reactions and the building was likely infested with mold.

31. By recklessly forcing Gregory to install electrical wiring, Ormiston and MSA exposed Gregory to unnecessary personal liability and exposed the MSA athletes to danger.

32. Ormiston and MSA failed to provide Gregory and his staff with basic and essential equipment to do his job.

33. MSA did not provide any walkie talkies (necessary equipment in ski racing), provided just one broken drill (several are necessary for installing gates in the snow and safety fencing), provided insufficient training gates, provided no Giant Slalom panels for training (dozens are necessary equipement), provided only four rolls of safety B-netting (again, a minimum of several dozens are needed safety equipment), and did not provide any videotaping equipment.

34. Gregory and others were forced to use their own personal video cameras.

35. Mr. Ormiston displayed a strong preference for younger coaches and made his age animus known.

36. All the coaches in the snowboard and freeskiing programs are younger than Gregory and Smith.

37. Ormiston conversely supported the inexperienced, new recruit, Mamie Phelan, who was a former athlete of Gregory at his former program in New


MONAGHAN SAFAR DUCHAM PLLC

156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com

Hampshire. Phalen had little to no coaching experience when taking the position at MSA.

38. MSA's own web site and official recruiting page exclusively advertises to younger coaches, excluding older workers from consideration by explicitly stating that the Academy "seeks energetic college graduates" and "is an exciting opportunity for recent graduates."

39. Ten days after terminating Gregory, around or about April 30, 2018 (and after being informed Gregory intended to bring a claim against MSA), MSA through Ormiston provided a letter to Gregory claiming five bases for his termination.

40. The reasons specified in the MSA letter are not supported by the evidence.

## III. CAUSES OF ACTION

### *A. Breach of implied contract as against MSA*

41. Plaintiff repeats and realleges paragraphs 1-40 above.

42. Under the common law, in certain circumstances, an employer's practices can become part of the employment relationship. An employee can then hold an employer to those practices in much the same way as a contract. *See, e.g.*, Dillon v. Champion Jogbra, Inc., 175 Vt. 1 (2002) at ¶ 10 ("[A]n employer may modify an at-will employment agreement unilaterally. . . . When determining whether an employer has done so, we look to both the employer's written policies and its practices.").

43. Such practices can modify the presumption that an employment is "at-will." *See* id. at 5, 819 A.2d at 707 ("An employer not only may implicitly bind itself




156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com

to terminating only for cause through its manual and practices, but may also be bound by a commitment to use only certain procedures in doing so.").

44. Beginning at Gregory's job interviews and running until at least September 2017, Ormiston and MSA repeatedly expressed to Gregory that his contract with MSA was a 3-year contract.

45. These expressions altered the general rule under Vermont law that an employer may terminate an employee "at will." Ross v. Times Mirror, Inc., 164 Vt. 13, 23, 665 A.2d 580, 586 (1995) ("It is axiomatic that an at-will employee may be discharged at any time with or without cause . . . unless the at-will relationship has been modified." (citation and quotation omitted)).

46. These expressions constitute an enforceable commitment to continue employing Gregory for 3 years and an acknowledgment that Gregory could be terminated only "for cause," not merely "at will."

47. Because he could only be terminated "for cause," Gregory could only be terminated for conduct for which he was on notice could result in termination. *See* Dulude v. Fletcher Allen Health Care, 174 Vt. 74, 80 (2002) ("To be upheld, discharge for just cause must meet two criteria of reasonableness: one, that it is reasonable to discharge the employee because of certain conduct, and the other, that the employee had fair notice, express or fairly implied, that such conduct would be grounds for discharge.").

48. It was not reasonable to discharge Gregory. Gregory committed no misconduct but rather consistently met and exceeded all metrics regarding his job performance. Gregory's excellent job performance is reflected in the achievements




156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com

of the Academy's athletes and in his continuing popularity with the Academy's athletes, coaches, parents, and community partners.

49. Gregory did not have fair notice that any of his conduct would be grounds for discharge.

50. Gregory was never told that the Academy was not satisfied with his job performance, and there were no other circumstances that would reasonably lead him to believe that his position was in jeopardy.

51. Gregory's termination was sudden, bizarre, and shocking and even MSA Board members were stunned and unaware of the discharge until after it happened.

*B. Violation of the federal Age Discrimination in Employment Act as against MSA*

52. Plaintiff repeats and realleges paragraphs 1-51 above.

53. The federal Age Discrimination in Employment Act (ADEA) protects employees 40 years of age and older from discrimination on the basis of age in hiring, promotion, discharge, compensation, and in terms, conditions, and privileges of employment.

54. To establish a prima facie case of age discrimination under the ADEA, an employee "must show that (1) he was within the protected age group, (2) he was qualified for the position, (3) he was discharged, and (4) the discharge occurred under circumstances giving rise to an inference of age discrimination." Ross v. Times Mirror, 164 Vt. 13, 24 (1995).

55. If the employer articulates an age-neutral reason for the termination after the employee has established a prima facie case, then the employee "must bear

MONAGHAN SAFAR DUCHAM PLLC
156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com

the ultimate burden of proving that the employee's age was the real reason for the discharge." Viola v. Philips Med. Sys. of N. Am., 42 F.3d 712, 716 (2d Cir. 1994) (citation omitted).

56. Gregory's termination violated the ADEA: (1) Gregory is 60 years old; (2) Gregory has worked very successfully in similar positions for many years, is very highly regarded in the industry as one of the country's leading coaches and continued to work successfully at the Academy for two seasons without any complaints; (3) Gregory was terminated; and (4) the circumstances give rise to an inference of age discrimination. These circumstances include Ormiston's use of language denigrating another employee on the basis of his age, Ormiston's micromanagement of Mr. Gregory, and Ormiston's attempt to develop a work culture that strongly favors young coaches- including but not limited to advertising positions at MSA exclusively to recent graduates.

57. Moreover, as the facts previously described show, there is no age-neutral reason for Gregory's termination. The explanations Ormiston gave for terminating Gregory were mere pretext.

58. Gregory is extremely experienced and successful in the national ski coaching community, and very well-liked and respected.

*C. Violation of the Vermont Fair Employment Practices Act for discrimination based on age as against MSA*

59. Plaintiff repeats and realleges paragraphs 1-58 above.

60. The analysis for illegal termination based on age discrimination under the Vermont Fair Employment Practices Act—21 V.S.A. § 495(a)(1)—is the same as for the ADEA. As previously noted, Gregory presents a prima facie case of age




156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com

discrimination because (1) he is 60 years old; (2) he has worked very successfully in similar positions for many schools and teams and continued to work successfully at the Academy; (3) he was terminated; and (4) the circumstances give rise to an inference of age discrimination. Moreover, there is no age-neutral reason for Mr. Gregory's termination.

*D. Tortious interference with a business relationship as against Ormiston, individually, and as against MSA.*

61. Plaintiff repeats and realleges paragraphs 1-60 above.

62. Under the common law, to succeed on a claim of tortious interference with a business relationship, a plaintiff must show "(1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional act of interference on the part of the interferer; (4) damage to the party whose relationship or expectancy was disrupted; and (5) proof that the interference caused the harm sustained." J.A. Morrissey, Inc. v. Smejkal, 2010 VT 66, ¶ 21, 188 Vt. 245, 6 A.3d 701.

63. Ormiston committed tortious interference with a business relationship by deliberately steering athletes and coaches away from Gregory's personal ski camp, Peak Performance: (1) Gregory maintains business relationships with his Peak Performance coaches and had an expectancy of business from the MSA athletes to attend his Peak Performance camps; (2) Ormiston knew about these relationships; (3) Ormiston has steered athletes and coaches away from Peak Performance and directed them to other camps, including camps run by a competitor; (4) Gregory's camp now has markedly low enrollment for the 2018 summer sessions and he may lose the abilty to employ the coach he expected to hire;




156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com

and (5) Ormiston's actions have and will harm Gregory and Peak Performance by decreasing enrollment, possibly having inadequate staffing and decreased revenues.

64. By bringing him on board only to terminate him illegally and without cause—and then to steer his athletes and coaches away from Peak Performance—Ormiston has blatantly shown that he is acting "with the purpose to harm" Gregory and "by means that are dishonest, unfair, or improper." Id.

## IV. INJURIES AND DAMAGES

### *A. Actual damages*

65. Plaintiff repeats and realleges paragraphs 1-64 above.

66. Mr. Gregory has lost wages for next year and will be unlikely to find another director position on such short notice of equal pay and caliber. He will likely need to accept a position far below what both his qualifications and experience should reflect, and such a position will inevitably result in lower pay.

67. Gregory has lost room and board just for next year, which had been provided by MSA.

68. Gregory has lost foreseeable enrollment for both this summer and fall camps as a result of MSA and Ormiston's steering of athletes and coaches away from Peak Performance. This loss will be expected to repeat itself until Gregory is able to reestablish a pool of athletes for his camps.

### *B. Punitive damages*

69. Plaintiff repeats and realleges paragraphs 1-68 above.

70. Gregory is entitled to punitive damages due to the facts underlying this case. Punitive damages are permitted by the federal Age Discrimination in Employment Act and the Vermont Fair Employment Practices Act.




156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com

71. Punitive damages are appropriate because of MSA and Ormiston's discriminatory, age-based practices, Ormiston and MSA's direct sabotage of Gregory's camp business and also because Gregory gave up his existing, stable employment to accept the position at the Academy in reliance on promises made by Ormiston and MSA.

*C. Attorney's fees*

72. Plaintiff repeats and realleges paragraphs 1-71 above.

73. Gregory requests all attorney's fees in this case. Vermont law and federal law entitle plaintiff employees to their attorney's fees in the award of any judgment for violation of the Fair Labor Standards Act (29 U.S.C. § 216(b)) and the Vermont Fair Employment Practices Act (V.S.A. § 495b(b)).

## V. JURY DEMAND

Plaintiff demands a trial by jury for all such triable issues.

WHEREFORE, Plaintiff David Gregory respectfully requests that this honorable Court enter judgment against Defendants and award the following relief:

(A) lost wages, lost room and board for next year, lost foreseeable enrollment for Peak Performance;

(B) punitive damages;

(C) attorney's fees and court costs; and

(D) grant any and all other relief as this Court deems equitable and just.




156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com

**VERIFICATION**

I, David Gregory, declare that the facts stated in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief.

David Gregory

[signature]

6-6-2018
Date

STATE OF NEW HAMPSHIRE
COUNTY OF CARROLL, ss.

At 3:40pm in said County this 6th day of June, 2018, David Gregory personally appeared, being first duly sworn, and he made oath that he has read the foregoing Verified Complaint, and that the facts contained therein are true to the best of his knowledge, information and belief.

KIM J. COCHRANE
MY COMMISSION EXPIRES NOV. 16, 2021
NOTARY PUBLIC
NEW HAMPSHIRE

Before me, [signature]
Notary Public
My Commission Expires: 11-16-2021

Dated at Burlington, Vermont this 5th day of June, 2018.

Respectfully Submitted,

[signature]

Claudine C. Safar, Esq. (lead counsel)
Christian S. Chorba, Esq.
Attorneys for David Gregory
Monaghan Safar Ducham PLLC
156 Battery Street
Burlington, VT 05401
(802) 660-4735
(802) 419-3662 (facsimile)
csafar@msdvt.com
cchorba@msdvt.com

MONAGHAN SAFAR DUCHAM PLLC

156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com



**VERIFICATION**

I, David Gregory, declare that the facts stated in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief.

David Gregory

_____________ _________________________

Date

STATE OF NEW HAMPSHIRE
COUNTY OF CARROLL, ss.

At ________ in said County this __ day of June, 2018, David Gregory personally appeared, being first duly sworn, and he made oath that he has read the foregoing Verified Complaint, and that the facts contained therein are true to the best of his knowledge, information and belief.

Before me, ______________________________
Notary Public
My Commission Expires: ___________

Dated at Burlington, Vermont this 5th day of June, 2018.

Respectfully Submitted,

Claudine C. Safar, Esq. (lead counsel)
Christian S. Chorba, Esq.
Attorneys for David Gregory
Monaghan Safar Ducham PLLC
156 Battery Street
Burlington, VT 05401
(802) 660-4735
(802) 419-3662 (facsimile)
csafar@msdvt.com
cchorba@msdvt.com




156 Battery Street
Burlington, VT 05401
T 802 660 4735
F 802 419 3662

92 Fairfield Street
St. Albans, VT 05478
T 802 524 9721
F 802 419 3662

www.msdvt.com